**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**MARCH SESSION, 1998**

FILED

May 15, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **ROBERT C. BELLAFANT,** | ) | **C.C.A. NO. 01C01-9705-CC-00183** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **MAURY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JIM T. HAMILTON** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

**ON APPEAL FROM THE JUDGMENT OF THE
CIRCUIT COURT OF MAURY COUNTY**

| | |
|---|---|
| FOR THE APPELLANT: | FOR THE APPELLEE: |
| | |
| DANIEL J. RUNDE | JOHN KNOX WALKUP |
| Assistant Public Defender | Attorney General and Reporter |
| P.O. Box 1208 | |
| Pulaski, TN 38478 | PETER M. COUGHLAN |
| | Assistant Attorney General |
| | 425 Fifth Avenue North |
| | Nashville, TN 37243 |
| | |
| | MIKE BOTTOMS |
| | District Attorney General |
| | P.O. Box 459 |
| | Lawrenceburg, TN 38464 |

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Petitioner, Robert Carroll Bellafant, appeals pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the trial court's denial of his petition for post-conviction relief. He argues (1) That the reasonable doubt instruction administered at his trial is constitutionally infirm; and (2) that trial and appellate counsel rendered ineffective assistance. We affirm the judgment of the trial court.

The Petitioner was convicted of first degree murder by a Maury County jury on August 27, 1986. The State had sought the death penalty, but in a separate sentencing proceeding, the jury sentenced him to life imprisonment. The Petitioner filed a direct appeal to this Court and his conviction was affirmed on November 12, 1987. State v. Robert C. Bellafant, C.C.A. No. 87-102-III, Maury County (Tenn. Crim. App, Nashville, Nov. 12, 1987). The Petitioner filed a *pro se* petition for post-conviction relief on October 24, 1990. With the assistance of counsel, the Petitioner filed an amended petition for post-conviction relief on August 18, 1995. After conducting an evidentiary hearing on December 11, 1996, the trial court denied relief in an order entered on January 8, 1997. It is from the trial court's denial that the Petitioner now appeals.

The facts of the case as summarized by a panel of this Court on the direct appeal are as follows:

> On the evening of January 4, 1986, both the victim and the defendant visited Dump's Cafe in Columbia, Tennessee. No words were

exchanged between them or hostilities exhibited while they were in the cafe. Shortly after the parties left the cafe the defendant was seen standing next to the victim's truck with a shotgun. As the victim began to back his truck at a rather rapid rate of speed, the defendant fired the shotgun at the victim, and left.

The defendant eventually surrendered himself to the police. He revealed to several people, including members of law enforcement, that he shot and killed the victim. He also admitted that the shotgun shells found at the scene of the homicide belonged to him.

It was established that the shotgun was fired in close proximity to the victim. The blast created a large hole in the victim's neck. The actual cause of death was exsanguination, or loss of blood.

The defendant testified the victim had threatened him earlier in the evening with a weapon. The defendant, tired of being threatened and running from the victim, went to the home of his cousin, obtained a shotgun, and returned to the situs of the homicide. The defendant placed the weapon between two cars and waited for the victim. The victim eventually approached his truck. When he stopped, the defendant ran to the victim's truck and shot the victim.

Id.

I.

The Petitioner first argues that the use of the term "moral certainty" as used in the jury instruction on reasonable doubt impermissibly lowered the burden of proof constitutionally required in criminal cases, thus denying his right to due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 8 of the Tennessee Constitution. The Petitioner recognizes that this Court has upheld the constitutionality of such an instruction, nevertheless, he asserts that we should reexamine our consideration of this issue.

The jury instruction used at the Petitioner's trial is as follows:

Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a capricious, possible, or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required as to every proposition of proof requisite to constitute the offense.

Our supreme court has upheld the use of jury instructions including the phrase "moral certainty," Carter v. State, 958 S.W.2d 620 (Tenn. 1997); State v. Nichols, 877 S.W.2d 722, 734 (Tenn.1994), and this Court has considered and approved the same instruction on a number of occasions. Pettyjohn v. State, 885 S.W.2d 364, 365 (Tenn. Crim. App. 1994); State v. Hallock, 875 S.W.2d 285, 294 (Tenn. Crim. App. 1993); State v. Rodney Corley, C.C.A. No. 01C01-9608-CR-00336, Davidson County (Tenn. Crim. App., Nashville, Sept. 2, 1997); Kenneth Culp v. State, C.C.A. No. 02C01-9608-CC-00268, Lauderdale County (Tenn. Crim. App., Jackson, July 24, 1997); Terry Shannon Kimery v. State, C.C.A. No. 03C01-9512-CC-00412, Greene County (Tenn. Crim. App., Knoxville, Jan. 28, 1997) perm. to appeal denied (Tenn. 1997). Although the Petitioner argues that we should "fear not the flood" but rather should "look to the light and the clear dawn of a new day in jurisprudence," we decline to reconsider the issue in accordance with our existing law. This issue has no merit.

II.

As his second issue, the Petitioner contends that counsel rendered ineffective assistance for several reasons: (A) That appellate counsel failed to

-4-

brief an issue raised on direct appeal regarding the trial court's prejudicial comments, resulting in a waiver; (B) that trial counsel failed to request a continuance to secure the testimony of Ronald Rone; (C) that trial counsel failed to suppress the Petitioner's statement about throwing his weapon into the Duck River; (D) that trial counsel failed to request an investigator and an independent psychological evaluation; and (E) that trial counsel inadequately investigated and prepared the Petitioner's case.

In determining whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard

-5-

v. State, 629 S.W.2d 4, 9 (Tenn. 1982).  Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper 849 S.W.2d at 746.

The hearing on the post-conviction petition was held on December 11, 1996.  One of the Petitioner's trial attorneys, George Lovell, testified, and the Petitioner testified.  In a post-conviction proceeding under the Act applicable to this case, a petitioner must prove the allegations in the petition by a preponderance of the evidence.  Davis v. State, 912 S.W.2d 689, (Tenn. 1995); Adkins v. State, 911 S.W.2d 334, 341 (Tenn. Crim. App. 1994).  In appellate review of post-conviction proceedings, the trial court's findings of fact are conclusive unless the evidence in the record preponderates against the findings. Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

## A. Comments by the Trial Judge

The Petitioner first argues that appellate counsel was inadequate for failure to brief an issue on appeal properly.  In his direct appeal, the Petitioner asserted that the trial court committed reversible error by instructing the jury in a manner that suggested they would have to conclude the case the next day:

> THE COURT:  All right.  The jury has all returned to the courtroom. Ladies and Gentlemen, it's 4 o'clock and I had hopes that we could finish all of the proof in this case today with the exception of one witness that was going to take about a few minutes according to the lawyers, but that's not going to be possible so I'm going to let you go on to the motel a little early today.  Remember what I said--but tomorrow--this is your last night at the motel.  Now, I'm just giving you fair warning that tomorrow we're going to finish this case.  And if we're sitting up here tomorrow night at midnight, then that's too bad. Okay?  Remember what I said, don't discuss

this case among yourselves.  There's still some evidence to hear.  Don't look in the newspaper about it, and don't watch any television or listen to any radio accounts of it.  See you in the morning at 9 o'clock.  Have a good evening.

Defense counsel moved for a mistrial which the trial judge overruled.  The trial judge made the following curative instruction the following day:

> THE COURT:  I got to thinking about it last night after I got home, and I told you all yesterday that we'd finish this case today, and I hope we do.  But I don't want you to think that that just means that without a doubt you've got to render a verdict today.  I don't think that you thought I meant that, but I didn't mean that, and, certainly, if you want to deliberate all night tonight, then that's certainly your privilege.  So I hope you didn't think that.  I didn't mean it that way.

On direct appeal, the issue was waived because of counsel's failure to cite authority or cite to the record.  The Petitioner contends that this amounts to ineffective assistance and cites Garton v. State, 555 S.W.2d 117, 119 (Tenn. Crim. App. 1976).  "While this Court strongly disapproves of failure to cite authority in support of argument in a brief, as Rule 15 of the Tennessee Supreme Court Rules makes clear, we are unwilling to say that such failure constitutes ineffective assistance of counsel per se. " Id.   In Garton, this Court noted that counsel had vigorously argued other issues and that the evidence against Garton was overwhelming. Id. We find the situation in the case sub judice akin to that in the cited case.  Here, counsel argued several issues on appeal and the evidence was clear that the Defendant committed the crime.  Therefore, we cannot conclude that counsel's performance was ineffective.  This is particularly true in light of the contested argument.  The trial court issued a curative instruction making it clear that the jury did not have to reach a verdict as in a "dynamite charge." Kersey v. State, 525 S.W.2d 139 (Tenn. 1975).  Furthermore, trial counsel testified that he felt no pressure from the trial court to conclude the case prematurely.  The post-conviction court held that the curative instruction

rendered any error by the trial court harmless. We cannot conclude that the evidence preponderates against the trial court's findings or that his conclusion is erroneous. Therefore, we find this issue to be without merit.

B.

Next, the Petitioner contends that trial counsel rendered ineffective assistance by failing to request a continuance to secure the testimony of Ronald Rone, a defense witness. Counsel testified at the post-conviction hearing that he interviewed Rone prior to trial and that his expected testimony was that he had seen or knew that William Hill, the victim in this case, carried a pistol. The victim was found with eight .38 caliber bullets in his pants pocket. When it was time for Rone to testify, he arrived at the courthouse drunk. At that point, trial counsel chose not to have Rone testify. Trial counsel was also aware of Rone's criminal record. Counsel did not request a continuance because it was well into the trial and he did not believe that Rone could necessarily be presentable the next day even if he had preserved him as a witness.

The Petitioner notes that, although bullets were found on the victim, no pistol was recovered. He contends that his self-defense theory was questionable because of this and that witnesses who saw Hill with a gun would substantiate his theory of defense. The defense did call another witness, Bobby Armstrong, who testified that he had seen a .38 caliber pistol in Hill's home a few days before the murder.

The Petitioner correctly points out that trial counsel has a duty to use witnesses who may be of assistance to the defense. State v. Zimmerman, 823

S.W.2d 220, 227 (Tenn. Crim. App. 1991). However, in <u>Zimmerman</u>, this Court noted that trial counsel failed to present a valid reason to change trial strategy and not call his defense witnesses. <u>Id.</u> Here, counsel investigated the victim's background and produced witnesses to support the self-defense theory. When one of those witnesses appeared drunk, we believe this was sufficient justification not to present the witness. With knowledge of the witness' background, counsel had reason to believe he would not be reliable. Clearly, his positive value to the defense was tenuous and his drunken state convinced trial counsel to forego his testimony. We cannot conclude that counsel's decision amounts to an error implicating his level of competency. This issue is without merit.

### C. Petitioner's Statement

The Petitioner next contends that counsel erred by failing to suppress an incriminating statement he made. Counsel testified that when the Petitioner was in custody, he made a statement to the police and that he told them he threw his gun into the Duck River. Counsel obtained copies of the Petitioner's statements. It was his understanding that the Petitioner was <u>Mirandized</u> and refused to make a statement but talked with his attorney, Billy Jack. Subsequently, the Petitioner was approached by the police and gave a statement after being <u>Mirandized</u>. Counsel was not aware of the content of the conversation between the Petitioner and Billy Jack. Counsel also testified that the Petitioner had turned himself in and stated his name and that he was the one who shot William Hill. Counsel testified that, in light of the Petitioner's admission, the statement that he threw the gun into the river was only a small factor in light of the entire case. As such, counsel stated that he concentrated on statements by the Petitioner and others that were

far more incriminating. Counsel concluded that the statement was essentially de minimus in the context of the entire case. Counsel did agree that he had a hearing to redact some information about the Petitioner during the testimony of a police officer. The officer testified that the Petitioner admitted that the shotgun he used he had borrowed and returned to his relative, rather than throwing it away.

The Petitioner testified that he refused to make a statement until he called his lawyer. He stated that Mr. Jack told him to refrain from making any statements. The Petitioner denied being Mirandized and stated that defense counsel never discussed the prospect of a motion to suppress his statement because his rights might have been violated. The Petitioner testified that his credibility was at issue and that this statement, which was contradictory to the actual disposition of the murder weapon, made him appear to be a liar and that this prejudiced the result of the trial.

Counsel testified that he assessed the nature of the statement in light of the facts and circumstances of the case and determined that the incriminating nature of the statement was of minor significance. In most circumstances, however, advocacy demands that an attorney attempt to suppress any incriminating evidence if arguable grounds exist. Nevertheless, on the record before us, we are hesitant to find counsel ineffective. Even if counsel's action was deficient, no prejudice has been shown. This issue is without merit.

D.  Failure to Request Expert Assistance

The Petitioner argues that trial counsel was ineffective for failure to request an investigator and a psychological or psychiatric evaluation.  The Petitioner points out that counsel requested and received a continuance, citing "difficulty in the investigation and preparation for the trial."  Defense counsel argued in their brief that the victim was a well-known member of the black community and that they had difficulty getting potential witnesses to cooperate because they were white. Counsel also stated that they were gaining some trust and new leads and needed more time to investigate them. Counsel testified that he did not seek to obtain an investigator, although it would have been helpful, because it was not the practice at the time. Counsel stated that he interviewed family members regarding potential witnesses, located them, but had trouble finding witnesses who had testimony that was favorable for the Petitioner.  Counsel also investigated the victim's propensity for violence. On cross-examination, counsel stated that the bulk of the witnesses saw the victim attempting to leave in his truck when the Petitioner shot him.  The Petitioner testified that Joe Hill was a potential witness who saw the crime who defense counsel did not contact.  The Petitioner denied that all of the witnesses at trial testified that they did not see the victim with a gun.  The Petitioner could not say what Joe Hill's testimony would have been.

In support of this contention, the Petitioner cites Tennessee Code Annotated section 40-14-207(b), which was in effect when he was tried and provides:

In capital cases where the defendant has been found to be indigent by the court of record having jurisdiction of the case, such court in an ex parte hearing may in its discretion determine that investigative or expert services or other similar services are necessary to ensure that the constitutional rights of the defendant are properly protected. If such determination is made, the court may grant prior authorization for these necessary services in a reasonable amount to be determined by the court. The authorization shall be evidenced by a signed order of the court. The order shall provide for the reimbursement of reasonable and necessary expenses by the executive secretary of the Supreme Court as authorized by this part, and rules promulgated thereunder by the Supreme Court.

The trial court found that getting an investigator was not the routine practice when the Petitioner was tried. The Petitioner correctly points out that statutory law provided for investigative services. However, the Petitioner has presented no evidence of witnesses or exculpatory evidence that would suggest that counsel's performance in investigating the case was deficient. This issue has no merit.

In addition, the Petitioner argues that counsel failed to request an independent psychological or psychiatric evaluation. Counsel did request and receive an evaluation at a mental health center regarding the Petitioner's insanity and competency to stand trial. Counsel admitted that the Petitioner's state of mind regarding threats from the victim was at issue, but was for the jury to determine. Counsel did not request an independent psychological expert to address how persons react to fear to validate that the Petitioner was acting because of fear of the victim.

The Petitioner argues that counsel could have, but did not request the services of an expert. He relies upon Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In that case, the Supreme Court held that an

indigent defendant's right to due process had been violated by a denial of funds to employ a psychiatrist. The Court held that when a defendant has made a threshold showing that his or her sanity at the time of the offense is likely to be a significant factor at trial, the defendant has a constitutional right to access to psychiatric assistance. Ake, 470 U.S. at 83, 105 S.Ct. at 1096. The holding in Ake is grounded in the Fourteenth Amendment's due process guarantee of fundamental fairness, assuring a criminal defendant a fair opportunity to present his defense.

In the case at bar, it does not appear that the Petitioner made a showing that his mental competency was implicated at the time he committed the crime. He underwent an initial evaluation at a mental health center from which we can only surmise that the Petitioner's mental state was not a viable issue. There is no evidence in the record before us that reflects that the Petitioner underwent a more extensive inpatient evaluation, which would suggest that insanity or mental competency to stand trial was at issue. The Petitioner has merely indicated that his mental state was at issue in regards to his theory of self-defense. Without more, it is not evident that trial counsel erred in failing to request a psychological or psychiatric expert during the guilt phase of the trial. See Cooper v. State, 847 S.W.2d 521, 529 (Tenn. Crim. App. 1992). Therefore, we cannot conclude that counsels' performance was deficient. This issue is without merit.

E.  Inadequate Investigation and Preparation

The Petitioner argues that trial counsel failed to investigate and prepare properly for his capital trial. The Petitioner testified that counsel met with him

about five times before his trial for approximately thirty minutes each visit. The Petitioner could not say what kind of investigation was conducted, how defense counsel treated the victim's propensity for violence and whether the victim carried a pistol. The Petitioner testified that counsel never told him about contacting witnesses concerning an incident prior to the shooting. The Petitioner stated that the victim "made a play" for him with a gun when he was in his truck and that he did not know if counsel investigated witnesses. The Petitioner admitted that counsel discussed the victim's prior criminal record and attempted to introduce it at trial, albeit unsuccessfully.

Counsel testified that they obtained the Petitioner's statements and reviewed them. Counsel also investigated witnesses and leads for potential witnesses, and even received a continuance to pursue their investigation more fully. Counsel obtained witnesses who would testify that the victim had a pistol in support of the theory of self-defense, but unfortunately, Ronald Rone was drunk when he was supposed to testify. Counsel could not recall the exact number of meetings with the Petitioner, but maintained that he was in close contact with the Petitioner's mother and exchanged information through her at times. Counsel talked with family members and enlisted them to help find witnesses. Counsel investigated the victim's tendency for violence. They did not go to the location of the prior altercation because the Petitioner stated the incident happened when no one was present.

On cross-examination, counsel indicated he had been in private practice for eleven years at the time of trial and that he had tried one prior death penalty

case. Counsel testified that the majority of the witnesses to the crime had testimony unfavorable to the Petitioner.

From the record before us, we cannot conclude that the evidence preponderates against the trial court's finding that counsel comprehensively prepared and thoroughly investigated the Petitioner's case. In fact, the trial judge noted that the proof in the case was some of the strongest that he had seen to support a first-degree murder conviction. Therefore, we find this issue to be without merit.

Accordingly, we affirm the judgment of the trial court dismissing the petition for post-conviction relief.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
JOE G. RILEY, JUDGE